## JAMES C. RAY *v.* THE STATE.

1. ORGANIZATION OF PETIT JURY. — Objections to the mode of drawing and impaneling a jury should be made by challenge to the array, or to the particular juror, and at the time the jury are being impaneled. Such objections are not available by motion for new trial, except in certain exceptional cases affecting the qualifications of a particular juror.

2. SAME — SPECIAL VENIRE. — The rulings in *Hardin* v. *The State, ante,* p. 355, and in *Taylor* v. *The State,* 3 Texas Ct. App. 169, approved, to the effect that in impaneling a jury from a special *venire* each juror is to be passed upon as he is presented.

3. SAME — PRACTICE IN THIS COURT. — The rulings of the court below in organizing a petit jury need not be revised here unless they infringed the jury law or prejudiced the accused.

4. TRIAL AND VERDICT BY LESS THAN TWELVE JURORS. — Under the Constitution and laws of this state, if, pending a trial, one or more jurors, not exceeding three, die, or be disabled from sitting, the remaining jurors may render the verdict; but each of them must sign the verdict so rendered. Whether a juror should be discharged on account of his sickness is a question for the sound discretion of the court below, and not revisable here when no abuse of that discretion is apparent.

5. SAME — CASE STATED. — The jury in a murder case having been impaneled, but no evidence adduced, one of the jurors was taken sick, and the defense proposed that he be discharged and another selected; but, a physician being consulted, and the juror concluding he could remain, the trial proceeded. After several witnesses were examined, the juror became worse, and was discharged by the court; and thereupon the accused moved that the whole jury be discharged, and objected to being tried by the eleven remaining jurors. *Held,* not error to overrule the motion and proceed with the trial before the remaining jurors.

6. EVIDENCE. — In a trial for murder, the accused proposed to prove his own movements and declarations several hours after the homicide, none of which had been elicited by the prosecution. *Held,* that such proof was incompetent and properly excluded.

7. DECEASED WITNESS. — It is competent for the prosecution to read in evidence the deposition of a deceased witness, duly taken at a previous trial of the accused by an examining court. *Johnson* v. *The State,* 1 Texas Ct. App. 333, cited on this point and approved.

APPEAL from the District Court of Delta. Tried below before the Hon. G. J. CLARK.

In the forenoon of August 1, 1877, Alfred H. Bledsoe was found dead in a public road leading from the village of Charleston, in Delta County. He had been to the village, and had traveled from it on horseback, about half a mile, to the place where his body lay. A bullet had entered the left breast, and inflicted instant death. Several persons heard the shot which doubtless sped the bullet, but no witness saw the deed.

The appellant, James C. Ray, was also seen in Charleston the same morning, and while the deceased was there. He was riding a gray mare, with a colt following her, and he rode out of the village on the same road, and a very few minutes after the deceased. It was in proof that a difficulty existed between them on some point of veracity, and that appellant had said that if Bledsoe denied making a certain statement to him, he (Bledsoe) would have him to whip or kill.

J. W. Wilson, for the State, testified that on the morning Bledsoe was killed, he, the witness, was working in a field which extended to within seventy yards of where the body lay, and, between nine and ten o'clock, he heard loud talking, and the report of a gun or pistol, from about where the body was found, from which spot the witness was then distant about 225 yards. Not as much as fifteen minutes previous he saw a covered two-horse wagon pass along on the road, and after that saw a man, riding a white or gray horse, coming from the direction of Charleston, and towards the spot where the body was found; but this man passed out of sight of witness about 100 yards short of that spot. Just after this the witness heard one person hail another, and loud and boisterous talk between them, but did not hear what was said. The same day, and before witness heard that Ray, the appellant, was suspected, he tried to recollect whose were the voices he had heard, and then thought one

of them was Ray's.   Witness had often heard Ray sing and talk, and was satisfied one of the voices was Ray's.

On his cross-examination this witness stated that he was a witness at the examining trial, and did not then tell about seeing any man pass on a gray or white horse.   But the witness denied that he had sworn at the examining trial that he saw no one pass except the persons in the covered wagon. In this matter the witness was contradicted by the justice of the peace who held the examining court, and by others present at it.

A great many witnesses were examined upon both sides, and in regard to many circumstances.   Their testimony consists largely of local description, necessary to a comprehension of the case made by the prosecution, but not susceptible of condensation.   The matters of fact involved in the rulings of this court are indicated in its opinion.

The jury found the appellant guilty of murder in the second degree, and assessed his punishment at ten years in the penitentiary.

No brief for the appellant.

*W. B. Dunham*, for the State, filed a pertinent and able brief.

WHITE, J.   Appellant in this case was indicted for the murder of Alfred H. Bledsoe.   The murder is alleged to have been committed August 1, A. D. 1877.   At the February term, A. D. 1878, of the District Court of Delta County the cause came on for hearing, and, on the seventh day thereof, resulted in the conviction of defendant of murder in the second degree, with his punishment affixed at imprisonment in the state penitentiary for a period of ten years.

The number of bills of exception saved and errors assigned show the great care and diligence exercised by coun-

sel for defendant at every step taken in the progress of the
trial, and we regret that, in our investigation of the case on
this appeal, we have been furnished by them with neither
oral argument or brief, to aid in the determination of the
questions raised. We have endeavored, however, to give
to each supposed error the consideration it demanded,
and our conclusion upon the whole record is that there are
but one or two questions, really, which require any discus-
sion, the others having been frequently passed upon and
adjudicated, and being now no longer open to controversy.

1. The objection to the manner in which the special *venire*
was drawn does not show the facts, by bill of exception or
otherwise, until raised for the first time on the motion for a
new trial, and the objection, as there stated, is not supported
by evidence in the record. Objections to the mode and
manner of drawing and impaneling the jury should be
made by challenge to the array, or challenge to the par-
ticular juror, as prescribed by the Code of Criminal Pro-
cedure. Pasc. Dig., arts. 3031–3040. Such challenges
should be made at the time the jury are being impaneled,
and are not available, except in certain exceptional cases
going to the qualifications of the particular juror, on a motion
for a new trial. With regard to the ruling of the court in
requiring the defense to pass upon the jurors severally, the
correctness of the ruling and practice is made evident by
reference to the following authorities: *Horbach* v. *The
State*, 43 Texas, 242; *Taylor* v. *The State*, 3 Texas Ct.
App. 169, and *Hardin* v. *The State*, decided at the present
term, *ante*, p. 355.

The third and fourth errors complained of, with reference
to the action of the court in connection with the jury, may
be stated concisely as follows: Shortly after the jury was
accepted and impaneled, but before any evidence was intro-
duced on either side, the attention of the court was called
to the fact that one of the jurors had been taken sick. De-

fendant proffered to discharge the juror and have another called in his stead.   A physician examined the juror, and he and the juror both came to the conclusion that, unless the juror got worse, he would be able to sit throughout the trial.   With this understanding the trial proceeded, when, upon the evening of the same day, the juror grew so much worse as to be unable to sit longer, and was discharged by the court.   Defendant then asked that the whole jury should be discharged, and objected to being tried by eleven men. His objection was overruled, and he saved a bill of exceptions.   It is not made to appear how, if at all, the ruling inured to the prejudice or special injury of the defendant. The rule is now settled that, " no prejudice to the appellant appearing to have resulted from the rulings of the court below in organizing the petit jury, and no infringement of the jury law in force when the trial was had being apparent, such rulings present no question necessary for revision."   *Dixon* v. *The State*, 2 Texas Ct. App. 530.

In this instance no rule of law was infringed ; on the contrary, it is provided, both in our Constitution and statute laws, that a verdict in certain contingencies (of which one is here presented) may be rendered by less than the whole number of the jury.   The constitutional provision reads:

" Grand and petit juries in the District Courts shall be composed of twelve men.   *   *   *   When, pending the trial of any case, one or more jurors, not exceeding three, may die or be disabled from sitting, the remainder of the jury shall have the power to render the verdict; provided that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict."   Const., art. 5, sec. 13.

In conformity with the authority here conferred, the Legislature, at its next session thereafter, did provide that " no verdict shall be rendered in any case in the District Court whereby the rights of any citizen shall be affected, except

upon the concurrence of all the jury (unless during the trial one or more jurors, not exceeding three, may die or be disabled from sitting, in which event the remainder of the jury shall have power to render the verdict) ; but when the verdict shall be rendered by less than the whole number, it shall be signed by every member ⁹of the jury concurring in it." Acts 1876, p. 78, sec. 19. In the case at bar the verdict was signed by the eleven remaining jurors. The discharge or retention of the juror was a matter addressed to the sound discretion of the court, and the explanatory statement of the judge to the bill of exceptions shows that that discretion was not only not abused, but that it was exercised with all necessary caution.

The main errors complained of with regard to the rejection of testimony, shown by the several bills of exception, relate to proposed evidence of acts and declarations of defendant after the homicide. The State did not put in evidence any part of his declarations made to the defendant's witness Stell, and, therefore, he was not entitled to the conversation had with that witness about the homicide the evening of the day it was committed. A party cannot, in this manner, manufacture evidence in his behalf. *Harmon* v. *The State*, 3 Texas Ct. App. 51. Nor did the State attempt to prove the flight of defendant as tending to establish his guilt; and the evidence sought to be introduced by him to show where he had gone, and what his intentions were in going, were clearly irrelevant and incompetent. 1 Whart. Cr. Law, sec. 714; *The People* v. *Rathburn*, 21 Wend. 509; *Campbell* v. *The State*, 23 Ala. 28.

By bill of exceptions No. 12 it was urged that the court erred in permitting the written testimony of a witness, taken before the examining court, to be read to the jury — the witness having died since giving the evidence. This was not error. *Johnson* v. *The State*, 1 Texas Ct. App. 333.

We deem it unnecessary to notice the other errors complained of, inasmuch as they present no new or unsettled questions. The charge of the court was a very full and explicit exposition of the law of the case. Defendant did not except to it, and the only additional instruction asked by him was given, as asked, by the court.

With regard to the evidence, whilst it is entirely circumstantial, and in some respects contradictory, we are forced to the conclusion, from a most careful study of it as we find it in the statement of facts in this record, that the jury did not err in finding the defendant guilty. If there are any extenuating or mitigating circumstances, they have not been shown.

We believe the defendant has had a fair and impartial trial, and see nothing to warrant us in interfering with the judgment. It is, therefore, affirmed.

*Affirmed.*